We will hear argument now in number 222175, Azumah versus United States Citizenship and Immigration Services. And Mr. Winograd, when you're ready. Thank you, your honors, and may it please the court. The question in this case is whether the petitioner meets the requirements to become a naturalized citizen. The court should hold that he does. There is no dispute that he was lawfully admitted for permanent residence in 2010 or that he continues to maintain that status. While the government initiated removal proceedings against him in 2014, when he returned in 2014, it later dismissed those proceedings in the exercise of prosecutorial discretion. My client, it does in the same position as any other LPR who is potentially removable, but not presently in removal proceedings, or subject to a final order of removal. And Congress believed that such LPRs should be allowed to naturalize rather than be left in an indefinite state of limbo. And most of the counsel can I just a technical point, I just want to make sure I'm following along. So your client still has LPR status, and he will have that status less than until he is removed. Is that how it works? That is correct, your honor, and the government has conceded as much. And I was going to say that most importantly, affirming the district court would leave millions of LPRs, categorically ineligible to naturalize, regardless of whether they've committed a crime simply because they have never entered the country as an LPR. So we asked the court to reverse the district court and remand solely for consideration. He's LPR, but he is also inadmissible, right? He is, if the government were to proceed in removal proceedings, that would be ultimately determined by an immigration judge. But he has been, yes, accused of being inadmissible. But even assuming he is presently inadmissible, that itself is not a bar to naturalization. Being inadmissible is a bar to other forms. I understand that. I'm just, I want to make sure that we are, he's an LPR, but he's inadmissible. Here's the question that like, I mean, I know you can get lots to say, but I got one that I want to focus on. Appreciate your response. So in 2014, after he has this month period where he's sort of on parole, he then is released on or about February the 20th of 2014. And the custody determination that's made is that he's released on his own reconnaissance, OREC. Yes, right. This is page 89 of the, of the and what, what I'm trying to, to figure out is why that is not the continuation of his parole. Right. So you, you make the argument in a variety of contexts that once that when this occurred, right, this event occurred, that's identified on that he was either admitted. I don't think you really say you maybe made that argument a little bit, but you also say it's taken off of parole. But what I don't understand is why this is not the reflection that he's still on parole. And in fact, that under this, under the regulations and statutes, he had to be on parole or in custody. Those are the only two options. Your honor, there is no evidence in the record that his parole was extended. There's clearly, clearly, I'm sorry, where, where it says he's released on OREC. Yeah, there was a difference between in immigration, there's a difference between parole from custody and parole as an immigration matter into the country. So, so to help me, help me understand sort of why, why that is, because when I look at, at 2235.3 C1, right, it's, it's like once they're inadmissible, they must be detained is option one or two. The parole can only be considered in accordance with 212.5 B. And 212.15 B, as we know, is the 1182 D5A parole, right? So, so it says if you're inadmissible, this is why inadmissibility seems to matter to me, at least, right? Then there are only two options for you. You're either in custody, right? Right, where it says, sorry, shall be detained, right? One, that's not your, your case, right? The other alternative is that the parole shall only be considered in accordance with 212.5 B. And that's the parole, that's the parole provision that's implementing 1182 D5A. So it seems like to me when it says he's released, they're complying with the CFR and they're doing it by virtue of parole. That's the only power they have to not detain him. I don't have the 235 where I get my fingertips of the government. It hasn't been relied on at any point thus far. I'm trying to figure out how it works, right? I mean, I'm not, this isn't, it's not a quiz, right? I'm not trying to like test you on it. If you don't, you can just say, I don't know, that's totally fine. But I swear I'm struggling. And so if you could help me. At this moment, I could point your honor to 8 CFR 2.2.5 E, which is about the termination of parole. Wait, say it one more time. 8 CFR 2.2.5 E, which talks about the termination of parole. And it says that, so even assuming my client was paroled, he would have been paroled for removal proceedings. And that parole would have terminated as soon as his proceedings terminated. But that's just not what it says, right? So it says the determination provision, I get that. It says unless otherwise indicated, right? And so we have at 89 otherwise indicated that he's being continued on parole because that's the only authority they had to not detain him. At this point, I simply, I can't further answer your honor's question without looking at that provision, but I would be happy to submit something. I just, if you, if you could help, that's great, but no worries. I'm going to ask your colleague, sorry. But even assuming that my client was not admitted and remains an applicant for admission to this day, he is still eligible to naturalize because he remains lawfully admitted for permanent residence. As defined in the INA, lawfully admitted for permanent residence refers to a status, not an event. There are many non-citizens who have never been admitted, like those who enter without inspection, who become lawfully admitted for permanent residence from within the country. And for purposes of naturalization, Congress was concerned with whether an applicant has the status of being lawfully admitted for permanent residence, not with whether they were ever admitted into the country as a permanent resident. Can I ask you a question, counsel? I just want to sort of take you to this regulation that the district court relied on, that the government is relying on, and say, I agree with you. Let's just assume hypothetically that when it says the applicant was lawfully admitted as a permanent resident, it means has the status of an LPR. What does it mean when it says in accordance with the immigration laws in effect at the time of the applicant's initial entry or any subsequent re-entry? What are they trying to get at there? I have stared at this for so long, I cannot make sense of it. Well, I think it is written in the disjunctive rather than the conjunctive. And I think they're doing that because the drafters of regulation realized that many, if not most, LPRs did not initially enter the country as LPRs. I don't even understand. How does that solve the problem? I mean, that means that if you enter the country not as an LPR, say as an asylee, you later obtain the status of LPR. What do you have to do, leave and then come back to come in under the second one? That doesn't seem to solve the problem. It's absurd. To the extent the reg creates a touchback requirement, I think there may be a colorable argument that the reg is ultra-virus. In this case, we at least have one initial admission as an LPR. So I don't think the court needs to grapple with it in that context. I understand that argument that I never have to understand what this regulation means to decide this case. But boy, I am truly puzzled. It looked to me like the fact that it says in accordance, it's part of a burden of proof provision. So that makes me think this is about how are you supposed to show that you have LPR status. And so maybe they meant like you have to have L, you have to have been, you have to have LPR status and it has to be consistent with the law at the, you know, then the question might be, well, consistent with what law? Like how do we measure whether your LPR status was properly granted? Do we look at the when you first came in, when you re-entered? So I thought maybe it meant that, but that doesn't really make any sense because if they're worried about the status, the relevant times would be when you got the status, maybe when you're applying for naturalization. I just can't figure out what is going on here. What is your best guess? The regulation is truly puzzling in part because it refers to a requirement that is not explicitly listed immediately above it in 3.16a. Is it not in implementing the 1429, the statutory 1429, which says the burden of proof shall be on the person to show that he entered the United States lawfully? Correct. So the statute requires two things, a lawful entry, which is different than a lawful admission, a lawful entry, but that's the event and that could be in any status plus being lawfully admitted for permanent residence, the status itself. So you just have to have a lawful entry at some point, plus the status of being lawfully admitted for permanent residence, even if that status is accorded from within the United States. I think that's the best reading of the statute overall and the regulation is considerably hard to square with it as well as somewhat internally contradictory. But I think what is clear is that the regulation is written in the statute and it only refers to one. So it has to, even assuming it creates an independent requirement, it only applies to the initial entry or any subsequent re-entry, not both. Well, but 1429 doesn't do that, right? I mean, I get it. I'm sort of a jitterish here. The regulation seems like gibberish, but when in doubt, right, one goes back and looks at the statute, right? And the statute says that you have to show that he entered the United States lawfully. And there's no dispute in this case that my client did enter the United States. And left. And then left. And then re-entered. And then came back. Well, that's the point I have tried to make is that I don't think he then re-entered because he's just done by parole and parole is not entry. Well, the government conceded in their response that my client has They can concede whatever they'd like to, right? Their argument is that he didn't lawfully enter. So they're arguing that he entered. The predicate to that is, did he enter, right? And if he didn't enter, they're arguing about the lawfulness of it just doesn't matter, right? It goes away. They lose, right? And the decision below or the decision was wrong on its face because it doesn't matter whether it was lawful or unlawful if it's no entry, right? The court has held. Well, I would say this saying that my client has not even affected an entry, I think would just prove too much because then he wouldn't be eligible for naturalization for a host of other reasons, including he's not residing within the United States and the agency and the government have never. I don't mean those issues weren't raised below. Like I'm just trying to figure out the question. I mean, what do you mean it proves too much? It means like if he didn't enter, right, by virtue of the Supreme Court's directive and the requirement in 1429, that you must show he lawfully entered. If he didn't enter, well, then like we're just, we're done. I mean, I don't know the consequences of that. This is all like a little convoluted, but if you look at the cases that the court cited in its order, none of them involved returning LPRs. They all, they all involved non-citizens who were seeking initial admission and then also found excludable as it was previously known. None of them involved LPRs who against whom the government never even... But Mezzi says it matters not whether they've been here before, right, or not, right? Mezzi says that that doesn't matter. We're looking at whether your entry is for the reason you're here now. With Mezzi, he was once granted permanent residence, but he was outside the country so long that he lost it and he had to apply for a new visa. And that's why the court says that his status is assimilated to that of that. Why did he, why did he lose it? So I don't, you claim that in your briefing, but I don't see in Mezzi that he lost it. I'm not sure I understand that. There's a discussion where he has to apply for a new quota visa when he was stuck in Hungary. That's because to enter and to be admitted is different than having LPR status. That's your guy, right? He has LPR status, but he's inadmissible. So you can have both of those statuses. Correct. But it doesn't, Mezzi, look, where in Mezzi does it say that he had lost LPR status? I don't see it anywhere in there. Now, look, you claimed it and you cited page 212 and 214. I read them. I had a relatively smart young guy read them, right? And like none of us can find it. I'll go back and address them as I want to address the 235 rank. But I would say this also, the reason it's called, it's called an entry fiction for a reason, because we're saying that people who are physically in the U.S. are considered outside the U.S. And the Supreme Court has told us to apply this fiction, right? So like we're, I mean, I might not like fictions, you might not like fictions, but I also understand that I'm an inferior judge. And there is no case where the fiction has ever been applied to a returning LPR who was not only allowed into the country, but whose removal the government did not even pursue. In Mezzi, they pursued his removal in all the other cases. But that wouldn't matter for the, for the, for the language purposes. Like that's a, that's a fact, right? Like it happened on Tuesday, but why was that, why is that a fact that matters? Because the court relied on that. They talked about the fiction applying to excluded aliens on parole. My client has not been excluded or ordered removed. He's been allowed- Excluded is a class like inadmissible. To be an excluded alien is to be an inadmissible alien. Those are comparable classes. They're not the same, but they're comparable classes. I think inadmissible is an adjective or is excluded as the court was using it as referring to a past event. In all those cases that the courts had in this order, there was an administratively final determination that the non-citizen was excludable or as we now call it inadmissible. And there's nothing comparable in this case. And there's just simply no case where the entry fiction has been, has been extended this far. Thank you. Good morning, your honors, and may it please the court. Carolyn Wisnowski, assistant United States attorney for the government. The issue is whether petitioner Raymond Azuma is eligible to naturalize after he failed to be lawfully admitted to the country in 2014 after a short trip abroad. Now the government's position is that he is not. And before I get into the really technical aspects of this case, I just want to take a step back to ground the court in the underlying context that we're in of naturalization, which is really unique from almost every other aspect of immigration law. The Supreme Court and this court have repeatedly stressed that no non-citizen has the slightest right to naturalization unless all the statutory requirements are complied with. Has it been the government's position in this case that the statutory requirements are not met? It seemed to me that the government's position was just that this regulatory requirement was not met. Well, your honor, our position would be yes, that the statutory requirements are not met and that he's statutorily ineligible to naturalize. Which statutory requirement did you, so the district court didn't identify any statutory requirement that wasn't met? Which statutory requirement did you tell the district court had not been met? Yes, that would be 8 U.S.C. 1429 because the underlying regulation 8 C.F.R. So you need the regulation? Yes, you need the regulation. Okay, so my question is, why does DHS have the authority to add additional naturalization requirements to the statute? Yes, your honor, I don't see this as adding a requirement to the naturalization requirements. This is, okay, go on, sorry. The regulation 316.2, which again, I understand why we've all been struggling with it, it's not the clearest written regulation, is supposed to be or is clarifying the burden and prerequisites of naturalization that 8 U.S.C. 1429. So this is like a Chevron argument. You think there's something ambiguous in the statute that is clarified by this regulation? I wouldn't say it's a Chevron argument that hasn't been brought up, petitioner has not. Yeah, the district court, it was weird, the district court did not use the word Chevron, but the district court said, well, no, this is a reasonable interpretation of the Is that the government's position? Yes, the government's position is, well, that's a Chevron argument, right? I mean, you can say Chevron or not, but if the reason this is not ultra-virus is because no, no, it's just a reasonable interpretation of the statute. Yes, well, I understand petitioner's argument to in some way, and the government's to both be saying there is some ambiguity in this statute, and this is how we are interpreting it. When you say 1427A, is it? 1429, I apologize. No, I was quoting the district court, so the district court may have misunderstood. That's what I'm trying to, I know the district court said 1427, but I guess what, is the government's position is 1427 or 1429? It seems to come right out of 1429, maybe not accurately, but at least 1429 tells us there are two requirements, lawful admission is permanent residence and lawful entry. Yes. Right? And so those are the two requirements of 1429. And in some shape, form or fashion, one might, if they stay way back and tilt their head, see two requirements in 316.2B, right? LPR, right? And entry. Yes, your honor. And I was so weird, I'm sorry, if you can, this is the most baffling thing, but this regulation doesn't even list 1429 as authority. It doesn't even list 1427. What is going on here? Well, it lists as its authority AUC1103, which is the power of the Senate. Yeah, but then it was all these specific things, but not these, not the ones, I just, it's not your problem, but I have no idea what's going on here. Yeah, and I want to help your honors understand the government's position in this case about what this actually means, because the petitioner has argued that our reading of this regulation somehow renders millions of lawful permanent residents ineligible to naturalize. And that's simply not the case for two reasons. First, because the way that I read this regulation is that once you gain the status of being a lawful permanent resident, anytime you leave the country, you need a lawful reentry. You need to be lawfully admitted into the country if you leave it. And the reason it has to be that is twofold. One, because as the petitioner said... I'm sorry, can you just say this one more time so that I'm totally sure? Because just one more time. Once a lawful permanent resident gained the status of being a lawful permanent resident, if they leave the country, they need to prove every single time that they came back that they were lawfully admitted into the country. I mean, that would make sense, but honestly... So yeah, help us understand at least some plausible way to read 316.2b. That's a totally reasonable position, by the way. And if I would think well of deferring to you and your interpretation of 1429. Unfortunately, I can't quite do that. I hear you. And I mean, listen, the elephant in the room is ARERA, enacted in 1996, the Illegal Immigration Reform and Immigrant Responsibility Act. And these regulations were written before ARERA. And ARERA basically took away the definition of entry from these regulations and replaced it with the word admission. So I think what your asking my colleague about entry is, you were talking about a pre-ARERA definition of entry. A lawful entry in that time was what is akin to now a lawful admission. It was inspection and authorization. Well, I'm just looking at section 1429, and it uses the word entered the United States lawfully. So this is not a pre-ARERA use of the word, right? It's just the word entered. Right. And the way I see it is that 1429 requires non-citizen to prove that he entered the United States lawfully. And the regulation 316.2 clarifies that that requires a lawful admission in accordance with the laws in effect at the time of any initial entry or subsequent re-entry. Have I lost you? Totally. Okay. I'm sorry. I mean, I really, I promise I've looked at it upside down sideways, right? The question is like what after the comma, right? If I understand everything up to the comma, and then what I don't get is in accordance with immigration laws in effect, right? So that's referring back to, that's describing the lawful admission. Right. Immigration laws in effect at the time of the entry or subsequent re-entry. Yes. Okay. So for one thing, I would like to point out that in this, in the regulation, it doesn't say that they were lawfully admitted for permanent residence. It says lawfully admitted as a permanent residence. And that's where I get the idea that once you become a lawful must show admission. But A, subsection A of the same regulation does seem to use those terms interchangeably, right? Or do you think lawfully admitted as a permanent resident in A2 means something different from lawfully admitted for permanent residence in A3? Do you think those have different meanings? Because it sure looks to me like whoever wrote this amazing regulation was using those terms interchangeably. I see your honor's point. I guess what I'm trying to do is like the court is make sense of this regulation. And I think the best way to do that is to really go back to ARERA, which made it so that a lawful permanent resident who had committed certain crimes like petitioner had, could not simply leave and re-enter the country without repercussion. Instead, wouldn't the repercussion, I mean, I thought the repercussion is he's removable now. He's not only be removed. Yes, he could be removed. No one's saying he can come back in without repercussions. That's the repercussion. And it's a big one. If the government had tried to remove him, we'd be having a very different conversation. Yes, your honor. But independently, the second repercussion was that he has never been deemed lawfully admitted. Instead, he remains an applicant seeking admission. Do you agree back to the first question I asked your colleague, which seems like a long time ago now, that he's still on parole? Because in just to make the argument, right, so he's on parole originally in 16 or 14, what year is it? 14, sorry, for a month. And then the question is what happens after that month, right? And J89 says he's released on his own reconnaissance. And as I read 235.3c1, at that point, there are only two choices that are available, right? One is he shall be detained in accordance with the statute, or he can be paroled in accordance with 212.5b, which is the standard parole statute. If those are the only two options, and it says that he's released on his own reconnaissance, don't we know he's still on parole? Well, actually, so your honor, I don't believe he's still on parole. But the reason I don't believe he's still on parole is because his removal proceedings were terminated. But why would that? So at that point in time, when were they terminated? 2018. Okay. And in 2018, why was parole terminated then? Like, well, so my reading of the way parole works is that until because so he was paroled into the country in 2014. But his notice to appear was not filed with an immigration judge until his removal proceedings began in 2018. And that is the moment at which parole actually stops when removal proceedings begin. And then once those removal proceedings were terminated, he goes back to having the same. But when removal proceedings begin, what is he on? When removal proceedings begin, I understood there to be only two options, right? You're either, if you're not already in the country, right? The removal proceedings, one of two things happens, you remain detained, or you're paroled. I mean, those are the only, I mean, tell me if I'm wrong, right? If you're in removal proceedings, and you're not in the country to begin with, right? Then in that scenario, you're either detained, right? And, you know, used to be that just keep you on Ellis Island, right? Or you're paroled. And so you're, you're, you know, let into the country under this entry fiction, right? You're let in. But we don't treat you as if you're here. But humanitarian reasons, we're going to let you can live here, despite having not let you legally enter. Yes, Your Honor, I'm simply not sure of the answer to your question, because I am not confident in the way that his determination of his removal proceedings changed that status. Because normally, if he had been, normally, if his removal proceedings had continued. Because if not, if he's not still on parole, then what is he? Is he admitted now? He's an applicant seeking admission. No, no, I understand that. But that's not that is not a question of like, that didn't affect his like, detention or presence, right? So that's a status, he could be an applicant seeking admission. It's in the United States or not, right? Those are like, what I'm asking is, what is his status with respect to his like, the body, the physical body, right? He's either admitted on parole, detained, like, I don't know what the other options are. And we know he's not detained. We know he's not admitted. So I don't understand how it's not still on parole. Your Honor, I'm just not sure that that is dispositive of the case. So I'm, I have no idea if it's dispositive, right? I'm, I literally just want to know. Yeah, I mean, I think it might matter for the case. Right? I think it might matter. Particularly for our case on appeal, it might not matter in the end of the day for his naturalization that I can't figure out. But all I got is, it might matter to me, in this case. The government's position that he is not currently on parole. Because in 2018, he... Proceedings were terminated. And that terminated his parole. Yes, and he... And so he's now admitted? No, he's an applicant seeking admission, which I understand is not the answer you're looking for. I just want the truth. I'm not trying to find a particular answer, right? I just want to know, it seems like to me, I'm going to repeat myself, he's either admitted, he's on parole, or he's detained. Those are the three options. There's not a fourth option that is limbo, right? Or whatever it is we want to describe what you say here. That's fine. I think we've beat the horse enough. I mean, I still don't know what to do with it. Here's why I don't think the parole matters. Right? If he's still on parole, then he has not been admitted to the United States, right? If his parole has been terminated, he also still has not been admitted to the United States. Because if your parole is terminated, you go back to the status that you had at the time you were granted parole. And statutorily, the only non-citizens who can get parole are applicants seeking admission. That's what he was at his point of entry. That's what he remains throughout this entire time period. Can I ask you a question? As with all of my questions today, I'm just so confused by all of this, and there may not be a good answer. Why is there so little law on this? Does this just not come up very often? Yes. That is another reason why I simply can't believe that there are millions of lawful permanent residents that USCIS's interpretation of the regulation would render ineligible to naturalize. Because this case, as far as I'm think Tishner is aware, has only come up in one other case, the Southern District of Texas, the Native Educ case, that the Fifth Circuit affirmed without any written analysis. You would think this would come up all the time, that people with LPR status might have to leave the country for some reason and come back. Well, I guess you would have to be inadmissible when you come back. But still, that's not a universal rule. If you know you're inadmissible, you might not applicant here. There are personal reasons why people sometimes have to leave the country. It's a slightly unusual situation, I think, because his original conviction was very close in time to when he gained lawful permanent status. Therefore, when he was put in removal proceedings, he wasn't eligible for the kinds of relief that other LPRs might have been eligible for at that time, such as a Section 212H waiver. There is out there somewhere a form of relief that can sometimes make this problem go away. That is probably why we don't have cases on it. Okay. If we go back and can't really make much of 316.2 or maybe interpret 316.2 as only addressing lawful admission, does that make a difference given that 1429 itself includes a requirement that he show he entered the United States lawfully? I mean, you're trying to interpret the CFR section to mean that there has to be a lawful entry, right? A lawful admission at the time of entry, because entry in this context really only means stepping over the border. He physically entered the country. A lawful entry means that he did so with procedural regularity, as in he was inspected by a Customs and Border Patrol officer. So, what if I just assuming hypothetically, I think I don't know what this regulation means, but the one thing I think I do know is that when it says the applicant was lawfully admitted as a permanent resident, that means had LPR status. This guy had LPR status both on his initial entry and on his subsequent re-entry. So, I don't think the regulation is a problem here. Can I just send this case back to the district court and say what you said doesn't work? So, now you figure out what, maybe there are some other arguments out there on either side about whether he is eligible for naturalization or not, and you figure it out. No matter the district court thing, if I do that. Um, if your honor, I mean, does the government have, if I think that's what this regulation means, is there any, does the government have an alternative argument for why this person should not be naturalized? No, your honor, I believe the government's sole main position is that this regulation requires a lawful permanent resident, like petitioner who had gained his position. Is it your only position? Yes, your honor. Okay. Is that, is that in part based on Chenery? So, in other words, like if, if we did what Judge Harris suggested, um, and then, uh, Judge Hilton says, I like Judge Harris's idea a great deal. And so, I'm going to do the same thing. And I'm going to say, um, agency, um, the reason you gave by relying on this regulation, I find faulty. Um, and that doesn't mean you get to be a citizen. That just means it goes back to the agency and the agency then has to have a different reason. And that reason might well be 1429. There was no lawful entry. That reason might be, I have no idea, right? But Judge Hilton could do the same thing that Judge Harris is suggesting, in, at least in theory, and say, the agency's decision is not supported as written. It might well be supported in some other way. But Chenery tells us that, like, that's not our job. Like the agency needs to do that. Well, Judge Hilton could, yes, remain to the agency, or he could determine that the petitioner is eligible for naturalization. But, but that would be an odd thing for him to do because we don't typically do that, particularly in cases that don't make sense to us. Um, when the agency is offered a rationale that we find unconvincing, we send it back to the agency for the agency to then say, okay, well, if that reason doesn't work, let me, let me look at the other elements that are required. We didn't focus on those because we didn't need to, right? And there's no reason to, you know, have Judge Hilton determine that he's 18 years old. Of course he's 18 years old, but each of these requirements must be met. The agency focused on one of them. If we find that explanation unconvincing, then wouldn't the right answer be for Judge Hilton to follow Judge Harris's lead and send it back to the agency to try again? I hesitate to tell Judge Hilton what the right answer would be, but that would certainly be one option that he could pursue, and a logical one. Thank you, Your Honors. I see that my time is up. I would ask the court to affirm the district court's decision and find that petitioner is not eligible to naturalize. Thank you, Your Honors. If I could start by addressing Judge Harris's question about why this scenario is so unusual. I believe that's the case, is that it's very unusual for DHS to do what they did here, which is exercise their discretion on the back end once they've already placed someone in proceedings. It's far more common for DHS to exercise their discretion on the front end when they encounter a returning LPR who may be inadmissible, especially if it's a middle-aged or elderly person that has a decades-old conviction. In that scenario, that happens far more often. And I simply, in that scenario, I don't think the agency does take the position that they're ineligible to naturalize, because if they did, those cases would arise all the time. We would always see them. But the only cases we've actually seen... What do you mean they exercise their discretion? What do they do? They decline to put the person in removal proceedings because they don't want to blow up their life, for lack of a better term. If a CBP officer... And so then they do what? Do they then admit them? Do they parole them? In that case, they would presumably admit them, but under the government... But they're inadmissible, right? And then, well, the government argues, and they would not be lawfully admitted. But I don't think... They would be paroled, right? To me, that's the whole point. They would be paroled back, and we're going to have no removal proceedings. That's totally fine. I don't understand how they could exercise discretion to admit an inadmissible individual. In that case, they may be wrongfully admitted, but they would be admitted nonetheless. And the agency does not then take the position that, oh, you were wrongfully admitted, therefore you were ineligible to nationalize. Because if they took that position, then we would see those cases all the time. Just to address a few of the other points, in terms of what the repercussions are, the repercussions not only are that they are potentially removable, but in the scenario that my friend posited in their brief of an LPR leaving and then reentering without inspection, in that case, there would be no doubt that they would not have a lawful entry under 1429. And in that case, they certainly would not be eligible for naturalization. With respect to the potential cure here, a 212H waiver, that waiver is only available to returning LPRs who are actively in removal proceedings. In this scenario, my client has no way to apply for a 212H waiver unless the government decides in its unreviewable discretion to reinitiate removal proceedings. So if you were to submit an application to USCIS, I can almost assure you that the agency would say, we don't have the authority to adjudicate a 212H waiver unless it's accompanied by an adjustment application, and my client has no LPR. In terms of whether the district court can remand this case to the agency, perhaps they can. I'm not saying they can, but I'm not sure what the answer is. Certainly in a case involving a decision from the Board of Appeals, the Board of Immigration Appeals, this court remands to the board all the time for further clarification. In this statute, you have the right to file a new civil action in district court. So I don't know if the same relationship between the court and the agency exists as typically arises, but I'm not certain about that. The government's position, as they said, is that he is not currently on parole, and that even if he is not admitted, he has at least entered the country. I understand that's their position, but can you help me understand, is there an option other than admission, parole, or detention? Everywhere I look, those are the only three options. Is there a fourth one, limbo? Limbo or just simple entry. Entry without admission or parole. That happens all the time. Is there authority for such an action to take place? Because nowhere that I look has I seen this fourth option of limbo. Neither admission, nor parole, nor detention, but just... I mean, I don't even know what to call it. Well, I mean, according to CBP records, he was admitted. That's what we submitted with our... I understand that. That's not answering the question though, right? You're not aware of any authority for this limbo position? Off the top of my head, no, but there are millions of non-citizens who are in this country without being admitted, or paroled, and who are not detained. They've just entered and they are physically present, as we would maintain our client is. And just last, I would note the BIA, and I'm happy to submit a 28-J letter on this, the BIA has consistently distinguished between parole from detention and parole into the United States. Parole, and they have said that parole from detention is completely distinct from parole into the country. And if the court finds that parole from detention is the same, that would actually make the immigration bar very happy, because immigration lawyers have long argued that parole from detention is equivalent, because any non-citizen who has been paroled in the country can apply for LPR status. And the board has consistently held that's only parole under 212, under section 1182 D5A. That is not parole from detention if you're released on recognizance. If the court has no further questions. Thank you very much. We will come down in Greek Council.
judges: Stephanie D. Thacker, Pamela A. Harris, Julius N. Richardson